## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 3:10CR178-MRB** |
| | : | |
| **v.** | : | **FIRST SUPERSEDING INDICTMENT** |
| | : | |
| **ROBERT R. SACCO,** | : | **18 U.S.C. § 371** |
| | : | **18 U.S.C. § 1343** |
| **Defendant.** | : | **18 U.S.C. § 1349** |
| | : | **18 U.S.C. § 1957** |
| | : | **26 U.S.C. § 7201** |
| | : | |
| | : | **FORFEITURE** |

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

1.     At all times relevant to this First Superseding Indictment, Paysource, Inc., Paysource II, Inc., Paysource III, Inc., Paysource IV, Inc., Paysource V, Inc. and Paysource VI, Inc., Paysource USA, Inc., Paysource USA VII, Inc.,  Paysource USA VIII, Inc. and Paysource USA X, Inc. (and its various other associated corporate entities hereinafter referred to as "Paysource"), was considered a professional employer organization (hereinafter referred to as "PEO") with main offices located at 6500 Poe Avenue, Dayton, Ohio 45412. Paysource was initially incorporated in 1998 under the laws of the State of Ohio.

2.     As a PEO, Paysource was a single source provider of integrated services which enabled business owners to cost-effectively outsource the management of human resources, employee benefits, payroll and workers' compensation and other strategic services, such as recruiting, risk/safety management, and training and development.  It did this by hiring a client

1

company's employees, thus becoming their employer of record for tax and insurance purposes. This practice is known as co-employment.

3.      In a co-employment contract, the PEO files certain tax returns under its own federal tax identification numbers. The client company continues to direct the employees' day-to-day activities. PEOs charge a service fee for taking over the human resources and payroll functions of the client company. This fee is in addition to the normal employee overhead costs, such as the employer's share of FICA, Medicare, and unemployment insurance withholding.

4.      The value proposition to client companies is that the use of a PEO tends to save time and staff that would otherwise be used to prepare payroll and administer benefits plans, and thereby reduce legal liabilities or obligations to employees that it would otherwise have.

5.      Paysource operated payroll processing centers in Dayton, Ohio and Orlando, Florida. Payroll processors working at these processing centers would input the payroll information received from client companies into a highly reliable and accurate computer accounting software system named Darwin. This system was specifically designed to provide unique payroll record keeping features, books and records for PEOs. Federal employment tax returns were automatically generated by the Darwin software computer system.

6.      At its height, Paysource had over 190 client companies located throughout the United States and achieved annual revenues of $120 million.

7.      The defendant **ROBERT R. SACCO**, previously served as Paysource's Chairman of the Board, Sole Shareholder and Controlling Executive Officer.

8.      Unindicted co-conspirator Charles C. Painter, previously served as Paysource's Chief Executive Officer and President.

2

9. Unindicted co-conspirator "T.G.", a person whose identity is known to the Grand Jury, previously served as Paysource's Controller.

10. In late 2006, the defendant **ROBERT R. SACCO** negotiated the sale of Paysource for $22 million to an Orlando businessman named Frank Amodeo who operated Mirabilis Ventures, Inc. The sale was structured such that the defendant **ROBERT R. SACCO** was to receive $12 million in cash and the $10 million balance in stock options.

11. On or about January 2007, Amodeo paid the defendant **ROBERT R. SACCO** an initial payment of $1,175,000.00. The cash balance was to be paid in subsequent monthly installments. Amodeo defaulted on his subsequent monthly installment obligations. As a result, by the end of March 2007, **ROBERT R. SACCO** professed that he was officially seizing the assets of Paysource. In reality, at no time did the defendant **ROBERT R. SACCO** ever relinquish to Amodeo actual day-to-day control of Paysource operations to include: receipt of client company payments, control of Paysource business bank accounts, the filing of periodic federal employment tax returns and the payment of federal employment taxes to the Internal Revenue Service.

12. At no time did either the defendant **ROBERT R. SACCO** or Amodeo ever notify Paysource company clients of any change in Paysource ownership or control. Likewise at no time did either Paysource or Amodeo ever attempt to re-negotiate any existing Paysource company client contracts.

3

## COUNT 1
### (Conspiracy to Defraud the United States by Impeding and Impairing the Internal Revenue Service - Klein Conspiracy; 18 U.S.C. § 371)

13.　　From on or about October 24, 2007 through April 30, 2009, while in the Southern District of Ohio and elsewhere, the defendant **ROBERT R. SACCO**, did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree with Charles C. Painter and "T.G.", a person whose identity is known to the Grand Jury, together with other unnamed individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Department of Treasury in the ascertainment, computation, assessment, and collection of revenue, specifically the federal corporate employment taxes attributable to Paysource.

### The Objects of the Conspiracy

14.　　The objects of the conspiracy included: the avoidance of the payment of federal employment taxes owed by Paysource for calendar years 2007 through 2009; and to conceal from the Internal Revenue Service the legitimate tax liabilities owed by Paysource to the United States Government.

### The Manner and Means

15.　　It was part of the conspiracy that defendant **ROBERT R. SACCO**, directed his co-conspirators to prepare certain IRS Form 941s (Employer's Quarterly Federal Tax Return) and IRS Form 941Cs (Supporting Statement to Correct Information) that fraudulently set forth total wages paid and employment tax liabilities owed by Paysource for the periods including the third and fourth quarters of calendar year 2007 and first quarter of calendar year 2009.

4

16.     It was further part of the conspiracy that defendant **ROBERT R. SACCO,** in his capacity as Paysource's Chairman of the Board, Sole Shareholder and Controlling Executive Officer, directed and caused Charles C. Painter and "T.G." to sign fraudulent IRS Form 941s and IRS Form 941Cs.

17.     It was further part of the conspiracy that defendant **ROBERT R. SACCO** caused these fraudulent IRS Form 941s and IRS Form 941Cs to be filed with the Commissioner of the Internal Revenue Service.

18.     It was further part of the conspiracy that defendant **ROBERT R. SACCO** caused material misrepresentations to be made to corporate accountants and auditors who maintained and reviewed the business and tax records of Paysource and the personal tax records and returns of defendant **ROBERT R. SACCO** and "N.S.", a person whose identity is known to the Grand Jury.

## Overt Acts

19.     In furtherance of the conspiracy and in order to achieve its objectives, the defendant, **ROBERT R. SACCO,** together with one or more of his fellow co-conspirators, committed, or caused to be committed at least one of the following overt acts, within the Southern District of Ohio:

a. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource, Inc. (using Federal Employer Identification Number xx-xxx-5343) concerning third quarter 2007 employment tax liability.

b. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource II, Inc. (using Federal Employer Identification Number xx-xxx-7590) concerning third quarter 2007 employment tax liability.

5

c. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource III, Inc. (using Federal Employer Identification Number xx-xxx-5110) concerning third quarter 2007 employment tax liability.

d. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource IV, Inc. (using Federal Employer Identification Number xx-xxx-8707) concerning third quarter 2007 employment tax liability.

e. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource V, Inc. (using Federal Employer Identification Number xx-xxx-0442) concerning third quarter 2007 employment tax liability.

f. On or about January 29, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource VI, Inc. (using Federal Employer Identification Number xx-xxx-5911) concerning third quarter 2007 employment tax liability.

g. On or about May 1, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource, Inc. (using Federal Employer Identification Number xx-xxx-5343) concerning fourth quarter 2007 employment tax liability.

h. On or about May 1, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource II, Inc. (using Federal Employer Identification Number xx-xxx-7590) concerning fourth quarter 2007 employment tax liability.

i. On or about May 1, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource III, Inc. (using Federal Employer Identification Number xx-xxx-5110) concerning fourth quarter 2007 employment tax liability.

j. On or about May 1, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource IV, Inc. (using Federal Employer Identification Number xx-xxx-8707) concerning fourth quarter 2007 employment tax liability.

k. On or about February 18, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource V, Inc. (using Federal Employer Identification Number xx-xxx-0442) concerning fourth quarter 2007 employment tax liability.

l. On or about February 18, 2008, in Dayton, Ohio, Charles C. Painter signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941C for Paysource VI, Inc. (using Federal Employer Identification Number xx-xxx-5911) concerning fourth quarter 2007 employment tax liability.

m. On or about April 30, 2009, in Dayton, Ohio, "T.G."signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941 for Paysource USA, Inc. (using Federal Employer Identification Number xx-xxx-1090) concerning first quarter 2009 employment tax liability.

n. On or about April 30, 2009, in Dayton, Ohio, "T.G."signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941 for Paysource USA VII, Inc. (using Federal Employer Identification Number xx-xxx-8738) concerning first quarter 2009 employment tax liability.

o. On or about April 30, 2009, in Dayton, Ohio, "T.G."signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941 for Paysource USA VIII, Inc. (using Federal Employer Identification Number xx-xxx-8760) concerning first quarter 2009 employment tax liability.

p. On or about April 30, 2009, in Dayton, Ohio, "T.G."signed and caused to be filed with the Internal Revenue Service a fraudulent IRS Form 941 for Paysource USA X, Inc. (using Federal Employer Identification Number xx-xxx-0364) concerning first quarter 2009 employment tax liability.

q. In or about April 2008, defendant **ROBERT R. SACCO** and Charles C. Painter engaged in a detailed telephone conversation concerning tactics and strategies on how to manipulate Paysource's employment tax liabilities and payments for the third quarter of 2007.

r. On or about April 25, 2008, defendant **ROBERT R. SACCO** and Charles C. Painter engaged in a series detailed telephone conversations concerning tactics and strategies on how to manipulate Paysource's employment tax liabilities and payments for the third and fourth quarters of 2007.

s. On or about May 1, 2008, defendant **ROBERT R. SACCO** and Charles C. Painter engaged in a detailed telephone conversation concerning tactics and strategies on how to manipulate Paysource's employment tax liabilities and payments for the third quarter of 2007.

t. On or about May 14, 2008, defendant **ROBERT R. SACCO** and Charles C. Painter engaged in a detailed telephone conversation concerning tactics and strategies on how to manipulate Paysource's employment tax liabilities and payments for the third and fourth quarters of 2007.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (Conspiracy to Commit Mail Fraud and Wire Fraud: 18 U.S.C. §§ 1341, 1343 and 1349)

20.     Between approximately October 24, 2007 and continuing through approximately October 14, 2008, in the Southern District of Ohio and elsewhere, defendant **ROBERT R. SACCO** and Charles C. Painter knowingly and willfully did combine, conspire, confederate and agree with each other, to commit certain offenses against the United States, to include: mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343.

### Objects of the Conspiracy

21.     The objects of the conspiracy were, among others: the avoidance of the payment of federal employment taxes owed by Paysource for calendar year 2007; and to conceal from the Internal Revenue Service the legitimate tax liabilities owed by Paysource to the United States Government while continuing to bill client companies for their full liabilities.

### Manner and Means

22.     The Grand Jury realleges all the allegations of paragraphs 1 thru 12 contained in this First Superseding Indictment as if they were fully reproduced herein.

23.     At all times during the above stated time period, it was a part of the conspiracy for the defendant **ROBERT R. SACCO** to cause Paysource invoices to be prepared and submitted to client companies located throughout the United States despite Paysource's unannounced prior suspension and termination of quarterly client company federal employment tax deposits to the Internal Revenue Service. These client companies were fraudulently induced to tender payments to Paysource based upon false, fictitious and fraudulent statements and representations contained in said invoices. The defendant **ROBERT R. SACCO** directed and caused Paysource to place these false, fictitious, and fraudulent invoices in interstate commerce for delivery via the U.S. Postal

service and commercial interstate carriers; and in turn, client companies caused payments to be transmitted via electrical signs and signals by means of wire communication from telephone numbers located at various businesses outside the state of Ohio, i.e., Illinois, Louisiana, Arizona, Montana and Texas, to telephone numbers installed at business locations and offices located within the Southern District of Ohio.

24.     It was further part of the conspiracy that defendant **ROBERT R. SACCO** and his co-conspirators caused criminally derived funds in excess of $10,000.00 to be transferred to and from accounts held and maintained in FDIC financial institutions located within the Southern District of Ohio and elsewhere, as part of their normal business operations in the Southern District of Ohio, which in turn promoted the carrying on of the specified unlawful activity to include: mail fraud and wire fraud in violation of 18 U. S. C. §§ 1341 and1343 respectively.

All in violation of 18 U.S.C. § 1349.

## COUNTS 3-12
## (Wire Fraud; 18 U.S.C. § 1343)

25.     The Grand Jury realleges all of the allegations contained in paragraphs 1 thru 19 of this First Superseding Indictment as if they were fully reproduced herein.

26.     Between on or about October 24, 2007 and October 14, 2008, in the Southern District of Ohio, and elsewhere, the defendant **ROBERT R. SACCO** did unlawfully, willfully and knowingly devise and intend to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by way of wire fraud, well knowing at the time that these pretenses, representations, and promises were false and fraudulent when made.

9

27.     On the below listed dates, in the Southern District of Ohio and elsewhere, the defendant **ROBERT R. SACCO** knowingly and willfully did execute the aforesaid scheme and artifice to defraud and to obtain moneys, funds, credits and assets by means of false pretenses, representations and promises, as set forth above, in that he knowingly caused Paysource to send invoices to client companies located throughout the United States, i.e., Illinois, Louisiana, Arizona, Montana and Texas, thereby inducing them to transmit in interstate commerce, by means of wire communications, certain signs, signals, and sounds, wire money transfers back to Paysource then located at 6500 Poe Avenue, Dayton, Ohio 45412. These payments represented federal employment tax due and owing to the United States Government which were not in-turn properly, fully and accurately forwarded in a timely fashion to the United States Government.

| Count | Date | Point of Origin | Point of Reception | Description |
|---|---|---|---|---|
| 3 | 11/21/2007 | Romar Transportation System Inc. Bank of America, NA Acct No. XXXXXX9258 | PAYSOURCE INC J.P.Morgan Chase Bank Acct No. XXXXX8341 | Wire Transfer of $69,986.04 |
| 4 | 10/1/2008 | Romar Transportation System Inc. Bank of America, NA Acct No.XXXXXX9258 | PAYSOURCE USA VIII INC Cachet Banq, Inc. East West Bank Acct No. XXXXXX8760 | Wire Transfer of $51,333.21 |
| 5 | 10/8/2008 | Romar Transportation System Inc. Bank of America, NA Acct No. XXXXXX9258 | PAYSOURCE USA VIII INC Cachet Banq, Inc. East West Bank Acct No. XXXXXX8760 | Wire Transfer of $51,562.94 |
| 6 | 10/15/2008 | Romar Transportation System Inc. Bank of America, NA Acct No. XXXXXX9258 | PAYSOURCE USA VIII INC Cachet Banq, Inc. East West Bank Acct No. XXXXXX8760 | Wire Transfer of $51,153.95 |
| 7 | 10/22/2008 | Romar Transportation System Inc. Bank of America, NA Acct No. XXXXXX9258 | PAYSOURCE USA VIII INC Cachet Banq, Inc. East West Bank Acct No. XXXXXX8760 | Wire Transfer of $49,437.36 |

| 8 | 10/25/2007 | Salus Solutions LLC<br>Capital One Bank<br>Acct No. XXXXX0578 | PAYSOURCE IV INC.<br>J.P.Morgan Chase Bank<br>Acct No. XXXXX3085 | Wire Transfer of<br>$156,548.47 |
|---|---|---|---|---|
| 9 | 11/1/2007 | Salus Solutions LLC<br>Capital One Bank<br>Acct No. XXXXX0578 | PAYSOURCE IV INC.<br>J.P.Morgan Chase Bank<br>Acct No. XXXXX3085 | Wire Transfer of<br>$142,442.09 |
| 10 | 11/8/2007 | Salus Solutions LLC<br>Capital One Bank<br>Acct No.XXXXX0578 | PAYSOURCE IV INC.<br>J.P.Morgan Chase Bank<br>Acct No. XXXXX3085 | Wire Transfer of<br>$153,479.58 |
| 11 | 10/2/2008 | Salus Solutions LLC<br>Capital One Bank<br>Acct No.XXXXX0578 | PAYSOURCE USA VIII INC<br>Cachet Banq, Inc. East West Bank<br>Acct No.XXXXXX8760 | Wire Transfer of<br>$151,407.26 |
| 12 | 10/10/2008 | Salus Solutions LLC<br>Capital One Bank<br>Acct No. XXXXX0578 | PAYSOURCE USA VIII INC<br>Cachet Banq, Inc. East West Bank<br>Acct No.XXXXXX8760 | Wire Transfer of<br>$158,583.32 |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNTS 13 - 51
### (Money Laundering; 18 U.S.C. § 1957 )

28.     Between on or about January 11, 2007 and on or about August 26, 2008, in the

Southern District of Ohio and elsewhere, defendant **ROBERT R. SACCO**, did knowingly and

willfully engage in the following monetary transactions that affected interstate commerce involving

criminally derived property of a value greater than $10,000, that is a transfer of certain monetary

instruments in the below listed amounts and dates, all of which were used for the payment of

defendant **ROBERT R. SACCO**'s personal credit card and other debts, such monetary proceeds

having been derived from specified unlawful activity, namely mail fraud in violation of 18 U.S.C.

§ 1341 and wire fraud in violation of 18 U.S.C. § 1343.

11

| Count | Date | Amount | Expense |
|-------|------|--------|---------|
| 13 | 02/06/2007 | $18,542.03 | ROBERT SACCO Bank of America Credit Card  No. 8429 Payment |
| 14 | 02/21/2007 | $10,816.38 | ROBERT SACCO Bank of America Credit Card No. 8429 Payment |
| 15 | 03/23/2007 | $40,000.00 | SunTrust (Fidelity Title dba WCI Title) |
| 16 | 04/13/2007 | $16,983.82 | ROBERT SACCO Bank of America Credit Card No. 8429 Payment |
| 17 | 10/15/2007 | $11,548.07 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 18 | 11/19/2007 | $14,419.19 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 19 | 11/27/2007 | $12,836.48 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 20 | 12/03/2007 | $13,045.00 | ROBERT SACCO Bank of America Credit Card No. 9021Payment |
| 21 | 09/26/2007 | $12,972.67 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 22 | 09/05/2007 | $19,010.89 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 23 | 09/24/2007 | $15,000.00 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 24 | 11/12/2007 | $18,854.10 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 25 | 12/03/2007 | $35,000.00 | Equitable Title Services |
| 26 | 12/10/2007 | $19,384.80 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 27 | 12/17/2007 | $24,800.00 | Purchase of 2008 Mercedes Benz |

| 28 | 2007 | $46,180.00 | "J.M." Gross Pay (Nanny) |
| 29 | 01/08/2008 | $19,330.46 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 30 | 01/16/2008 | $20,959.67 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 31 | 01/29/2008 | 14,284.70 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 32 | 02/04/2008 | $30,000.00 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 33 | 02/11/2008 | $19,682.48 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 34 | 02/20/2008 | $11,902.65 | ROBERT SACCO Bank of America Credit Card No. 2686 Payment |
| 35 | 02/22/2008 | $18,641.05 | Routsong Funeral Home |
| 36 | 02/25/2008 | $12,089.13 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 37 | 03/04/2008 | $24,464.73 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 38 | 03/18/2008 | $14,397.43 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 39 | 03/20/2008 | $12,244.00 | "N.S." Bank of America Credit Card No. 1279 Payment |
| 40 | 03/25/2008 | $15,486.78 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 41 | 04/01/2008 | $20,949.43 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 42 | 04/08/2008 | $10,601.44 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 43 | 04/10/2008 | $40,000.00 | Routsong Funeral Home |

| 44 | 04/15/2008 | $23,150.00 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 45 | 05/06/2008 | $35,035.25 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 46 | 05/06/2008 | $35,035.25 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 47 | 05/12/2008 | $29,091.51 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 48 | 06/09/2008 | $10,778.97 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 49 | 06/20/2008 | $14,129.55 | ROBERT SACCO Bank of America Credit Card No. 9021 Payment |
| 50 | 07/28/2008 | $14,850.84 | ROBERT SACCO Bank of America Credit Card No. 5177Payment |
| 51 | 08/26/2008 | $14,295.11 | ROBERT SACCO Bank of America Credit Card No. 5177 Payment |

All in violation of 18 U. S. C. § 1957.

## COUNTS 52-61
### (Attempt to Evade and Defeat Tax; 26 U.S.C. § 7201)

29.    The Grand Jury realleges all of the allegations contained in paragraphs 1 thru 19 of this First Superseding Indictment as if they were fully reproduced herein.

30.    Between approximately January 29, 2008 and approximately April 30, 2009, in the Southern District of Ohio, defendant **ROBERT R. SACCO** who was then the Chairman of the Board, Sole Shareholder and Controlling Executive Officer of Paysource, an Ohio corporation with its principal place of business in Dayton, Ohio, did willfully attempt to evade and defeat a large part of the federal income taxes withheld from the wages and Federal Insurance Contributions Act taxes due and owing to the United States of America for the respective quarters ending September 30,

14

2007 and the March 31, 2009, by preparing and causing to be prepared, and by signing and causing

to be signed, false and fraudulent IRS Forms 941 Employer's Quarterly Federal Tax Returns, and

IRS Forms 941C Supporting Statements to Correct Information.  These said tax returns were filed

with the Internal Revenue Service reflecting the below listed wages and federal income tax liabilities

reported to the Internal Revenue Service, whereas, as he then and there well knew and believed, the

actual total wages paid to Paysource, employees and federal income tax liabilities due and owing to

the United States of America for the respective quarters are listed as follows:

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

| Count | Entity and Employer Identification Number | Tax Return Filed and Quarter/ Year | Fraudulent Tax Return Signed By | Date Fraudulent Tax Return Signed | Wages Reported on Fraudulent Forms | Actual Wages Paid | Reported Tax Liability | Actual Tax Liability |
|---|---|---|---|---|---|---|---|---|
| 52 | PAYSOURCE INC. XX-XXX5343 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $2,612,325.65 | $6,252,619.65 | $ 628,871.85 | $1,563,221.85 |
| 53 | PAYSOURCE Il INC. XX-XXX7590 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $2,441,566.37 | $6,630,667.71 | $ 603,532.90 | $1,710,688.65 |
| 54 | PAYSOURCE lll INC. XX-XXX5110 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $4,182,186.67 | $7,422,907.74 | $ 889,375.77 | $1,825,649.77 |
| 55 | PAYSOURCE IV INC. XX-XXX8707 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $1,514,828.33 | $3,933,805.82 | $ 367,005.95 | $972,236.78 |
| 56 | PAYSOURCE V INC. XX-XXX0442 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $1,827,774.00 | $3,145,198.48 | $ 389,409.08 | $792,336.50 |
| 57 | PAYSOURCE VI INC. XX-XXX5911 | Form 941C 3rd Quarter 2007 | Charles Painter, CEO | 1/29/2008 | $ 990,888.14 | $2,641,284.24 | $ 243,821.25 | $653,686.19 |
| 58 | PAYSOURCE USA INC. XX-XXX1090 | Form 941 1st Quarter 2009 | "T.G.", Controller | 4/30/2009 | $2,024,655.72 | $2,745,570.83 | $ 560,608.38 | $742,306.67 |
| 59 | PAYSOURCE USA Vll INC. XX-XXX8738 | Form 941 1st Quarter 2009 | "T.G.", Controller | 4/30/2009 | $2,256,514.48 | $3,274,046.60 | $ 510,406.88 | $746,289.75 |
| 60 | PAYSOURCE USA VIll INC. XX-XXX8760 | Form 941 1st Quarter 2009 | "T.G.", Controller | 4/30/2009 | $7,506,749.44 | $10,296,835.04 | $1,895,545.53 | $2,647,181.40 |
| 61 | PAYSOURCE X INC. XX-XXX0364 | Form 941 1st Quarter 2009 | "T.G.", Controller | 4/30/2009 | $4,081,974.54 | $5,455,833.74 | $1,030,203.96 | $1,396,354.05 |

In violation of Title 26, United States Code, Section 7201.

## COUNTS 62-67
### (Attempt to Evade and Defeat Tax; 26 U.S.C. § 7201)

31.    The Grand Jury realleges all of the allegations contained in paragraphs 1 thru 19 of this First Superseding Indictment as if they were fully reproduced herein.

32.    On or about May 22, 2008, in the Southern District of Ohio, defendant **ROBERT R. SACCO** who was the Chairman of the Board, Sole Shareholder and Controlling Executive Officer of Paysource, an Ohio corporation with its principal place of business in Dayton, Ohio, did willfully attempt to evade and defeat a large part of the federal income taxes withheld from the wages and Federal Insurance Contributions Act taxes due and owing to the United States of America for the period ending December 31, 2007, by preparing and causing to be prepared, and by signing and causing to be signed, false and fraudulent IRS Forms 941C Supporting Statements to Correct Information.  These said tax returns were filed with the Internal Revenue Service, reflecting the below listed federal quarterly tax deposits as paid on behalf of  Paysource, employees for said quarter, whereas, as he then and there well knew and believed, the total federal quarterly tax deposits actually paid on behalf of  Paysource, employees for said quarter was  $0, upon which  federal income taxes were due and owing to the United States of America.

| Count | Entity and Employer Identification Number | Form Filed and Quarter/ Year | Fraudulent Form 941C Signed By | Date Fraudulent Form 941C Signed | Total Wages Reported on Fraudulent Form 941C | Tax Liability Reported on Fraudulent Form 941C |
|---|---|---|---|---|---|---|
| 62 | PAYSOURCE INC. XX-XXX5343 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $6,717,452.40 | $1,667,000.64 |
| 63 | PAYSOURCE II INC. XX-XXX7590 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $7,067,804.76 | $1,821,778.88 |

17

| 64 | PAYSOURCE III INC. XX-XXX5110 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $7,302,184.04 | $1,785,292.76 |
| 65 | PAYSOURCE IV INC. XX-XXX8707 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $4,392,806.16 | $1,085,843.82 |
| 66 | PAYSOURCE V INC. XX-XXX0442 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $2,310,266.75 | $585,623.10 |
| 67 | PAYSOURCE VI INC. XX-XXX5911 | Form 941C 4th Quarter 2007 | Carey Painter, CEO | 5/1/2008 | $2,699,543.90 | $645,999.62 |

In violation of Title 26, United States Code, Section 7201.

## FORFEITURE ALLEGATION
## SPECIFIED UNLAWFUL ACTIVITY PROCEEDS

Upon conviction of one or more of the offenses alleged in Count 2 (Conspiracy to Commit Mail and Wire Fraud) and Counts 3 - 12 (Wire Fraud) defendant **ROBERT R. SACCO**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2) or 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from, proceeds obtained directly or indirectly as a result of said violation, including but not limited to the following:

      a.      MONEY JUDGMENT:

A sum of money equal to $26,729,098.79 in United States currency, representing the amount of proceeds obtained as a result of the offense, 18 U.S.C. § 1349, Conspiracy to Commit Mail and Wire Fraud (Count 2) and 18 U.S.C. § 1343, Wire Fraud (Counts 3 - 12).

18

## FORFEITURE ALLEGATION
## MONEY LAUNDERING

Upon conviction of one or more of the offenses set forth in Counts 13-51, the defendant

**ROBERT R. SACCO** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any

property involved in each offense in violation of 18 U.S.C. § 1957, for which the defendant is

convicted, and any property traceable to such property, including but not limited to the following:

      a.      MONEY JUDGMENT:

A sum of money equal to $26,729,098.79 in United States currency, representing the total

amount of money involved in each offense, or conspiracy to commit such offense, for which the

defendant is convicted.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the

defendant:

      (1)      cannot be located upon the exercise of due diligence;

      (2)      has been transferred or sold to, or deposited with, a third party;

      (3)      has been placed beyond the jurisdiction of the court;

      (4)      has substantially diminished in value; or

      (5)      has been commingled with other property which cannot be divided without

               difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A  T R U E    B I L L

_____/s/_____

F O R E P E R S O N

CARTER M. STEWART
UNITED STATES ATTORNEY

LAURA I. CLEMMENS
Dayton Branch Chief

20